UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GERARD HEARD,

                    Plaintiff,

        - against -

THE CITY OF NEW YORK, ET AL.,

                    Defendants.

---

No. 15-cv-6469 (JGK)

MEMORANDUM OPINION
& ORDER

JOHN G. KOELTL, District Judge:

In this action, Gerard Heard has sued Police Officer James Roche alleging claims of false arrest and denial of the right to a fair trial, in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. See also Garnett v. Undercover Officer C0039, 838 F.3d 265, 276 n.6 (2d Cir. 2016) (concluding that a fair trial claim may arise under either the Fifth Amendment or the Sixth Amendment, as applied pursuant to the Fourteenth Amendment, or both).[1] Officer Roche arrested Heard after allegedly discovering a knife and pepper spray in plain view in a vehicle in which Heard was a passenger, and Heard was later charged with criminal possession of a weapon in the fourth degree. Heard alleges that Officer Roche did not have probable cause to believe that Heard possessed the knife and pepper spray. Officer Roche has moved

---

[1] Heard originally named The City of New York, Police Officer Darlin Padilla, and Police Officer John Doe as additional defendants in this action. Heard has withdrawn his claims as to the City, Officer Darlin, and the John Doe officer.

pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment, arguing that he did not violate Heard's constitutional rights and that he is at least entitled to qualified immunity. For the reasons that follow, Officer Roche's motion is **granted**.

I.

The following facts are undisputed unless otherwise noted.

On January 19, 2015, Heard left a night club in the Bronx and entered an automobile owned by Byron Washington. Def.'s 56.1 Stmt. ¶ 4. Washington was seated in the driver's seat of the vehicle. See id. ¶ 9. Heard was seated in the back, left seat of the car behind the driver. Id. ¶ 5. Another person named Luis Toro was also in Washington's vehicle, seated in the back, right seat of the car behind the front passenger seat. Id. ¶ 6. Heard alleges that, in addition to Washington, Toro, and himself, three women were also present in Washington's vehicle -- one woman was seated in the front passenger seat and two other women were seated in the back seat with Heard and Toro. Pl.'s 56.1 Counterst. ¶ 35. Officer Roche denies the presence of the three women. Def.'s Repl. 56.1 Stmt. ¶ 35.

Washington began to drive the vehicle away from the night club. See Def.'s 56.1 Stmt. ¶ 8; Friedman Decl. Ex. B, at 44. Officer Roche, who was on foot patrol with other police officers outside the night club, stopped Washington's vehicle. Id. ¶¶ 7-

2

8. Heard later testified that the vehicle had traveled only about ten feet before the police officers stopped it. Friedman Decl. Ex. B, at 44-45. After stopping the vehicle, one of the police officers removed Washington from the driver's seat, and then Officer Roche entered the driver's seat to turn the vehicle off and take the key out of the ignition. Def.'s 56.1 Stmt. ¶¶ 9-11.

Officer Roche testified that when he entered the driver's seat of the vehicle, he observed a gravity knife and a bottle that bore a label indicating that it contained pepper spray on top of the center console of the vehicle, which was located between the driver's seat and the front passenger seat near a cup holder and the gear shift. Id. ¶¶ 12-15, 21, 27; see Friedman Decl. Ex. D, at 19. Officer Roche later testified that he asked Heard, Washington, and Toro if the knife and the pepper spray belonged to them, and all three individuals denied ownership. Friedman Decl. Ex. D, at 45-46.

Heard contends that neither he, Toro, nor Washington were ever questioned about ownership of the knife and pepper spray. Heard Decl. ¶¶ 3-5; see Friedman Decl. Ex. B, at 65. Toro also testified that he was not questioned about ownership of the knife and pepper spray. Friedman Decl. Ex. C, at 56. Heard testified that, after Washington was removed from the vehicle, a police officer ordered Heard to open his door, and once Heard

unlocked the door he was pulled from the vehicle and immediately put in handcuffs. Friedman Decl. Ex. B, at 48, 50, 54. Heard could not recall whether there was a center console between the front seats. Friedman Decl. Ex. B, at 52. Toro testified that he could not see the center console from where he was sitting in the vehicle. Friedman Decl. Ex. C, at 55. Washington testified that there was no center console in the car but that he could not remember if there was anything in the cup holders of the vehicle that night. Friedman Decl. Ex. F, at 49. Washington further testified that he could not recall whether there was a gravity knife or pepper spray in the vehicle at the time he was stopped. Id. at 48.

According to Officer Roche, after he found the knife and pepper spray, Heard, Washington, and Toro were arrested and taken to the precinct. Def.'s 56.1 Stmt. ¶ 25; Friedman Decl. Ex. B, at 58. Heard contends that the women who were present in the car were not arrested or questioned. Pl.'s 56.1 Counterst. ¶ 40. Heard was charged with criminal possession of a weapon in the fourth degree, Def.'s 56.1 Stmt. ¶ 28, and was detained for approximately thirty-two hours. Pl.'s 56.1 Counterst. ¶ 67. Heard's charges were dismissed when he acceded to an adjournment in contemplation of dismissal. Id. ¶ 68.

Heard filed this § 1983 action alleging that Officer Roche's conduct violated the plaintiff's right under the Fourth

Amendment to be free from false arrests and his right under the Fifth and Fourteenth Amendments to a fair trial.[2] Officer Roche now moves for summary judgment with respect to Heard's false arrest claim, arguing that (1) Heard's arrest was based upon probable cause; and (2) Heard's arrest was supported by arguable probable cause, and therefore that Officer Roche is entitled to summary judgment on the basis of qualified immunity. Officer Roche also moves for summary judgment with respect to Heard's claim for denial of the right to a fair trial, arguing that Heard has failed to demonstrate that Officer Roche fabricated evidence likely to influence a jury's verdict or that Officer Roche forwarded such evidence to prosecutors.

## II.

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 318

---

[2] Heard does not allege that the stop or search of Washington's vehicle violated any of Heard's constitutional rights. Heard also does not contest that ownership of a gravity knife and pepper spray could support a charge of criminal possession of a weapon in the fourth degree. Heard also does not deny that a gravity knife and pepper spray were recovered at the time of the arrest. See Ex. 15 to Massimi Decl. (Property voucher for gravity knife and pepper spray); (Tr. of Oral Arg. 4-5).

(1986); Gallo v. Prudential Residential Servs. Ltd. P'ship, 22
F.3d 1219, 1223 (2d Cir. 1994). "The trial court's task at the
summary judgment motion stage of the litigation is carefully
limited to discerning whether there are any genuine issues of
material fact to be tried, not to deciding them. Its duty, in
short, is confined at this point to issue-finding; it does not
extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving
party bears the initial burden of "informing the district court
of the basis for its motion" and identifying the matter that "it
believes demonstrate[s] the absence of a genuine issue of
material fact." Celotex, 477 U.S. at 323. The substantive law
governing the case will identify those facts which are material
and "only disputes over facts that might affect the outcome of
the suit under the governing law will properly preclude the
entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a
court must resolve all ambiguities and draw all reasonable
inferences against the moving party. See Matsushita Elec. Indus.
Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing
United States v. Diebold, Inc., 369 U.S. 654 (1962)); see also
Gallo, 22 F.3d at 1223. Summary judgment is improper if there is
any evidence in the record from any source from which a
reasonable inference could be drawn in favor of the nonmoving

party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Howard v. City of New York, 302 F. Supp. 2d 256, 259 (S.D.N.Y. 2004), aff'd, 363 F. App'x 805 (2d Cir. 2010).

### III.

### A.

Officer Roche moves for summary judgment dismissing Heard's false arrest claim. Officer Roche argues that, because he discovered the gravity knife and pepper spray in plain view and none of the people in the vehicle claimed ownership of these items, he was justified pursuant to the automobile presumption in attributing ownership of these items to Heard, one of the passengers in the vehicle. See N.Y. Penal Law § 265.15. Therefore, Officer Roche argues that the arrest of Heard was supported by probable cause. Moreover, Officer Roche argues that he is at least entitled to qualified immunity because he had

arguable probable cause to arrest Heard for ownership of the
gravity knife and the pepper spray.

"[A]n arrest must be supported by probable cause or else it
violates the Fourth Amendment." United States v. Valentine, 539
F.3d 88, 93 (2d Cir. 2008) (citing Beck v. Ohio, 379 U.S. 89, 91
(1964)). Section 1983, to the extent that it provides a remedy
for violations of the Fourth and Fourteenth Amendments, protects
an individual's right to be free from arrest without probable
cause. See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).
When analyzing § 1983 claims for false arrest, courts generally
look "to the law of the state in which the arrest occurred."
Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004) (collecting
cases). "Under New York law, a plaintiff claiming false arrest
must show, inter alia, that the defendant intentionally confined
[the plaintiff] without [the plaintiff's] consent and without
justification." Amore v. Novarro, 624 F.3d 522, 532 n.13 (2d
Cir. 2010) (internal quotation marks and citation omitted). "The
existence of probable cause to arrest constitutes justification
and is a complete defense to an action for false arrest, whether
that action is brought under state law or under § 1983." Id. at
536 (quoting Weyant, 101 F.3d at 852) (internal quotation marks
omitted). "Probable cause exists if at the time of the arrest
'the facts and circumstances within th[e officer's] knowledge
and of which [he] had reasonably trustworthy information were

sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" Id. (quoting Beck, 379 U.S. at 91) (alterations in original); see also Gutierrez v. City of New York, No. 13-cv-3502, 2015 WL 5559498, at *4 (S.D.N.Y. Sept. 21, 2015).

Officer Roche argues that Heard's false arrest claim should be dismissed because Officer Roche had probable cause to believe Heard possessed the gravity knife and pepper spray at the time of Heard's arrest. Officer Roche relies on the so-called automobile presumption, which provides in relevant part that "[t]he presence in an automobile, other than a stolen one or a public omnibus, of any . . . gravity knife . . . is presumptive evidence of its possession by all persons occupying such automobile at the time such weapon, instrument or appliance is found, except . . . if such weapon, instrument or appliance is found upon the person of one of the occupants therein." N.Y. Penal Law § 265.15(3). The automobile presumption "allows -- but does not require -- the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant." County Court of Ulster City v. Allen, 442 U.S. 140, 157 (1979); see also People v. Lemmons, 354 N.E.2d 836, 839-40 (N.Y. 1976). The presumption is "evidentiary in nature and may be rebutted by [the] defendant's own testimony or by any other evidence in the case,

including the inherent or developed incredibility of the prosecution's own witnesses." Mejia v. City of New York, 119 F. Supp. 2d 232, 256 (E.D.N.Y. 2000) (citation and quotation marks omitted) (describing the effect of the similar presumption in N.Y. Penal Law § 220.25 for the presence of a controlled substance in an automobile). Certain facts known to the police officer may be sufficient to rebut the presumption and therefore negate the existence of probable cause to prosecute. See id. at 256–57. When making an arrest, a police officer is not required to investigate every piece of theoretical evidence of innocence that might exist, but the officer cannot disregard exculpatory facts related to the ownership of the illicit material already known to the officer. See Jocks v. Tavernier, 316 F.3d 128, 135–36 (2d Cir. 2003); see also Shabazz v. Kailer, 201 F. Supp. 3d 386, 393–94 (S.D.N.Y. 2016).

The automobile presumption is plainly appropriate in this case. Officer Roche testified that he found a knife and pepper spray in plain view in a common area of the vehicle; that none of the occupants of the vehicle claimed ownership of the knife or pepper spray; and that there were no indications that the knife or pepper spray belonged to any one of the occupants of the vehicle in particular. That testimony is largely undisputed. Heard testified that he could not recall whether there was a center console between the front seats. Toro testified that he

10

could not see the center console from where he was sitting in the back, right side of the vehicle. And Washington testified that he could not remember if there was anything in the cup holders -- which Officer Roche described as a part of the region where he found the items -- nor could Washington remember whether a gravity knife or pepper spray were inside the vehicle. Officer Roche was therefore entitled to presume that each occupant of the vehicle possessed the knife and the pepper spray. See People v. Ayen, 864 N.Y.S.2d 591, 593 (4th Dep't 2008) (concluding that there was a "legitimate basis for the [defendant's] arrest pursuant to the automobile presumption" where the defendant was in a vehicle in which the police found a gun); People v. Gordon, 725 N.Y.S.2d 423, 425 (3d Dep't 2001) (finding that the automobile presumption "provided probable cause for defendant's arrest"); People v. Miller, 655 N.Y.S.2d 579, 579 (2d Dep't 1997) (finding that the presence of a gun sticking out from under the driver's seat "gave the officers probable cause to arrest the occupants" of the vehicle.); see also Matthews v. City of New York, 889 F. Supp. 2d 418, 436 (E.D.N.Y. 2012) (holding that, under the automobile presumption, "once [a] firearm was discovered [in the vehicle] and remained unclaimed, the [police officers] had probable cause to arrest all vehicle occupants").

Heard argues that several factual disputes preclude summary judgment on the basis of the automobile presumption. These arguments are unpersuasive.

Heard asserts that Lieutenant Michael Lau, another police officer present at Heard's arrest, delivered several conflicting versions of the events that caused the police to pull over Washington's vehicle, and argues that these conflicting statements by Lieutenant Lau could allow a jury to disbelieve that there was probable cause to stop the vehicle and to disbelieve the entirety of Officer Roche's account of the events of January 19, 2015. But any contradictions in Lieutenant Lau's statements would be immaterial to the issue of whether Officer Roche discovered the gravity knife and the pepper spray in plain view. Although Heard argues in his brief that a reasonable jury could find that there was not probable cause to stop Washington's vehicle, Heard does not allege anywhere in his complaint that the stop of Washington's car was unconstitutional or that the gravity knife and pepper spray were the fruits of an unconstitutional stop. There is no claim in this case for an allegedly unlawful stop.

Neither does Heard explain why inconsistencies in Lieutenant Lau's testimony would cause a jury to discredit Officer Roche's account. The only connections Heard draws between Lieutenant Lau's testimony and Officer Roche is that

Lieutenant Lau did not observe the gravity knife or pepper spray in the vehicle, did not see if any occupants in Washington's vehicle possessed those items, and did not see if any officers removed the items from the vehicle. That does not call into question whether Officer Roche discovered the gravity knife and pepper spray in plain view when he searched the vehicle. Officer Roche testified that he approached the car along with two other officers who were not Lieutenant Lau, and that he was the only officer to enter the vehicle and subsequently discover the gravity knife and pepper spray in the center console area. Friedman Decl. Ex. D. at 40, 44. Nothing in Lieutenant Lau's testimony undermines Officer Roche's account.

Heard asserts that both he and Toro testified that there were three women in Washington's car on January 19, 2015, while Officer Roche testified that only the three men were occupants when he approached the vehicle. Heard argues that given this dispute, and drawing all ambiguities in his favor, Officer Roche's explanation that he had the authority to arrest everyone in the vehicle is contradicted by the fact that he did not arrest the women. Therefore, Heard argues, a reasonable jury could choose to believe that the automobile presumption does not apply. This dispute is also immaterial. Even assuming that the three women were present, Officer Roche was not obliged to arrest all occupants of the vehicle in order for the automobile

presumption to apply. Section 265.15 provides that an item's presence in a vehicle justifies an officer in presuming that the item is possessed by all occupants of the vehicle, so long as the item is not plainly possessed by one of the occupants. But nothing in § 265.15 requires an officer in such a scenario to arrest all occupants of a vehicle. See N.Y. Penal Law § 265.15(3).

Heard also points to the factual dispute between Officer Roche's testimony that each occupant denied ownership of the knife and pepper spray when they were asked, and the testimony of Heard and Toro that they were never asked about the knife and the pepper spray. Heard argues that given this dispute, a reasonable jury could find that because none of the occupants were asked about the knife and pepper spray, it was unreasonable for Officer Roche to conclude that he had probable cause, pursuant to the automobile presumption, to arrest Heard. This dispute is also immaterial. The automobile presumption does not require that an officer receive, from each occupant, an affirmative denial of ownership before the presumption can be applied. Instead, § 265.15 creates a permissive presumption of possession with respect to the occupants of a vehicle so long as the items are not "found upon the person of one of the occupants therein." Id. Here, none of the occupants claimed possession of the items. Nor is there any evidence that any of the occupants

14

possessed the items to the exclusion of the others in the car. After establishing probable cause, Officer Roche was not duty bound to ask the occupants whether the items belonged to one of them. See Jocks, 316 F.3d at 135-36 ("We [do] not impose a duty on the arresting officer to investigate exculpatory defenses offered by the person being arrested . . . .").

Finally, Heard argues that the fact that there are no existing photos or videos of the vehicle search could indicate to a jury that Officer Roche did not produce any photographs or videos because such evidence would undercut his version of the events leading up to and including Heard's arrest. Heard has not cited to any authority holding that probable cause is negated in the absence of photographs depicting the location of a search. And the fact that video footage of the incident from a nearby taxi stand was apparently not preserved does not conflict with Officer Roche's testimony regarding his search of the vehicle. There is no indication that there is any video footage of the inside of Washington's vehicle as opposed to the vehicle's interaction with the officers in front of the night club. Moreover, an internal investigation report notes that several attempts were made to download the video, but there is no indication of a successful retrieval, and therefore the failure to produce the video does not adversely affect Officer Roche's credibility. See Massimi Decl. Ex. 12.

15

To defeat a motion for summary judgment, the non-moving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d at 532; Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) (collecting cases).

Accordingly, Officer Roche is entitled to summary judgment dismissing his false arrest claim because, under the automobile presumption, there was probable cause to believe that Heard possessed the gravity knife and pepper spray found in Washington's vehicle.

**B.**

Officer Roche also argues that he is entitled to qualified immunity on the false arrest claim because he had, at least, arguable probable cause to arrest Heard.

Even if an officer did not have probable cause for an arrest, the officer may still be shielded from liability for false arrest under the doctrine of qualified immunity. Qualified immunity protects government officials performing discretionary functions, such as arrests, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Plumhoff v. Rickard, 134 S. Ct. 2012, 2023

(2014); Ashcroft v. Iqbal, 556 U.S. 662, 672 (2009); Malley v. Briggs, 475 U.S. 335, 341 (1986) ("As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law."). "Requiring the alleged violation of law to be clearly established balances . . . the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Wood v. Moss, 134 S. Ct. 2056, 2067 (2014) (citation and internal quotation marks omitted). As the Supreme Court has explained, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001) (citation omitted), overruled on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009).

In the case of an alleged false arrest claim, an officer is entitled to qualified immunity if the officer had "arguable probable cause" to make the arrest, which means that "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Amore v. Novarro, 624 F.3d 522, 536 (2d Cir. 2010) (citation

17

omitted). "'[A]rguable probable cause' . . . focus[es] attention on the word 'clearly' established law, and [shields an] officer[ from liability] if reasonable officers could disagree as to what the law is." Torraco v. Port Auth., 539 F. Supp. 2d 632, 651 (E.D.N.Y. 2008), aff'd, 615 F.3d 129 (2d Cir. 2010); see also McKay v. City of New York, 32 F. Supp. 3d 499, 506 (S.D.N.Y. 2014).

As explained above, Officer Roche's testimony establishes that he had probable cause to arrest Heard. It follows naturally from the conclusion that Officer Roche had probable cause to arrest Heard that Officer Roche had at least "arguable probable cause" to arrest Heard. See Bennett v. Vidal, 267 F. Supp. 3d 487, 494-95 (S.D.N.Y. 2017). Officer Roche is therefore entitled to qualified immunity.

## IV.

Finally, Officer Roche moves for summary judgment dismissing Heard's fair trial claim.

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997); Jocks, 316 F.3d at 138 (2d Cir. 2003); see also

O'Neal v. City of New York, 196 F. Supp. 3d 421, 428–29 (S.D.N.Y. 2016), aff'd sub nom. O'Neal v. Morales, 679 F. App'x 16 (2d Cir. 2017). The Second Circuit Court of Appeals has held that a § 1983 plaintiff may sue an officer for denial of a right to fair trial based on the fabrication of evidence when the allegedly fabricated evidence "is the officer's own account of his or her observations of alleged criminal activity, which he . . . then conveys to a prosecutor." Garnett, 838 F.3d at 274. "In order to succeed on a claim for a denial of the right to a fair trial against a police officer based on an allegation that the officer falsified information, an arrestee must prove by a preponderance of the evidence that the officer created false information, the officer forwarded the false information to prosecutors, and the false information was likely to influence a jury's decision." Id. at 279–80; see also Lauderdale v. City of New York, No. 15-cv-1486, 2018 WL 1413066, at *8 (S.D.N.Y. Mar. 19, 2018). Probable cause to arrest is not a defense to denial of a right to fair trial. Ricciuti, 124 F.3d at 130; see also Bennett, 267 F. Supp. 3d at 497–98 (S.D.N.Y. 2017).

As evidence of fabrication, Heard points to the disparities between his version of the events leading up to the vehicle stop and Officer Roche's version of the events. Heard alleges that the documents that Officer Roche sent to the district attorney describing the arrest constituted a false narrative that

19

ultimately deprived Heard of his liberty. Heard argues that Officer Roche's account of the events were falsified to justify Heard's arrest and detention.

The differences to which Heard points between the various accounts of his arrest are not sufficient to create a genuine dispute as to whether Officer Roche intentionally falsified information or fabricated evidence. See, e.g., Bennett, 267 F. Supp. 3d at 499 (granting summary judgment dismissing a fair trial claim in the absence of evidence of deliberate misidentification); Greene v. City of New York, No. 08-cv-243, 2017 WL 1030707, at *25 (E.D.N.Y. Mar. 15, 2017) (granting summary judgment on a fair trial claim because the contention that officers deliberately falsified evidence was based on "sheer speculation, and [did] not create a material issue of fact for trial").

Heard relies on the decision of the Second Circuit Court of Appeals in Morse v. Fusto, 804 F.3d 538 (2d Cir. 2015), in which the court held that there is "no plausible legal distinction" between the fraudulent omission of factual information from a document and the affirmative perpetration of a falsehood. Id. at 550. Yet to the extent that Heard has pointed to omissions in Officer Roche's criminal complaint, Heard merely speculates that those omissions were made with the intent to deceive. See id. at 549. Heard's allegation that Officer Roche's account of the

events were falsified to justify his arrest and detention is not supported by any evidence.

Accordingly, Officer Roche is entitled to summary judgment on Heard's claim of the denial of the right to a fair trial.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. As explained above, Officer Roche's motion for summary judgment is **granted**. The Clerk is directed to enter judgment dismissing this case. The Clerk is also directed to close all pending motions and to close this case.

**SO ORDERED.**

Dated:    **New York, New York**
           **August 10, 2018**

                        **John G. Koeltl**
         **United States District Judge**